Lina Baroudi (Cal. State Bar #269610)
LAW OFFICE OF LINA BAROUDI
2680 S. White Rd., Ste. 151
San Jose, CA 95148-2079
T: (408) 300-2655
lina@linalaw.com

Attorney for Petitioner-Plaintiff,
Michelly De Jesus Sandigo Ortega

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHELLY DE JESUS SANDIGO ORTEGA,<br><br>Petitioner-Plaintiff,<br><br>v.<br><br>JAMES JANECKA, Warden, Adelanto ICE Processing Center;<br><br>ERNESTO SANTACRUZ JR., Field Office Director, Los Angeles Field Office, U.S. Immigration and Customs Enforcement;<br><br>DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement;<br><br>MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security;<br><br>TODD BLANCHE, Attorney General of the United States;<br><br>Respondents-Defendants. | No.<br>DHS # A 232-299-928<br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. Petitioner is a 26-year-old citizen of Nicaragua who was paroled into the United States on March 16, 2023, for two years. On March 11, 2024, within one year of her arrival and before her authorized stay expired, she filed an affirmative asylum application with U.S. Citizenship and Immigration Services ("USCIS"). That application remains pending.

2. Since it vetted and paroled her in March 2023, the government has known exactly who Petitioner is and where she lives. USCIS accepted her asylum application, which identified her by name, address, and photograph; collected her biometrics; and, on January 24, 2025, granted her an Employment Authorization Document ("EAD") under 8 C.F.R. § 274a.12(c)(8), valid through January 23, 2030. The government thus made an affirmative decision to allow Petitioner to live and work at liberty while her asylum claim proceeds.

3. Petitioner used that liberty as the law intends. She lives with her relative in the San Francisco Bay Area and works as an assistant teacher supporting children with disabilities and as a part-time server at a pizzeria. She has epilepsy and depends on medication and a special diet.

4. On October 12, 2026, without notice, without any change in her circumstances in more than nineteen months, and without any prior hearing, Immigration and Customs Enforcement ("ICE") agents seized Petitioner at Los Angeles International Airport ("LAX"). She is now detained at the Adelanto ICE Processing Center in Adelanto, California, 405 miles from her home and family.

5. The Due Process Clause forbids the government from revoking years of government-sanctioned liberty without first affording a hearing before a neutral decisionmaker. Courts in this Circuit have held, on similar facts, that a noncitizen who has lived at liberty for years under the government's affirmative decision not to detain her holds a protected liberty interest and may not be re-detained without

pre-deprivation process. *See, e.g., Gansukh v. Warden, Adelanto ICE Processing Ctr.*, No. CV 26-5447-AS, 2026 WL 2962655, at *3 (C.D. Cal. Oct. 1, 2026); *Yao v. Janec[k]a*, No. 5:26-CV-04735-DTB, 2026 WL 2666861, at *6 (C.D. Cal. Sept. 10, 2026); *Abdeltawab v. Armant*, No. 5:26-cv-01520-MWF (DTB), 2026 WL 1045564, at *2 (C.D. Cal. Apr. 13, 2026) (liberty interest "extends to those like Petitioner who have never been in immigration custody in the first place due to years of deliberate acquiescence by Respondents").

6. A post-detention bond hearing does not cure that violation. See *Yao*, 2026 WL 2666861, at *6 ("[M]any courts considering this issue have found that a post-detention bond hearing does not rectify the harm of a due process violation because the petitioner 'will have already suffered the harm' that such petitions raise – her potentially erroneous detention."); *Hasratyan v. Bondi*, No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) (granting preliminary injunction) ("[T]he post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was owed."); *Saballos Rosales v. Noem*, No. 5:26-CV-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (granting preliminary injunction; same, quoting *Hasratyan*).

7. Petitioner was also arrested without a warrant and without the individualized findings that the immigration statute and regulations require. She asks this Court to order her immediate release and to enjoin her re-detention absent a pre-deprivation hearing. *See Yao*, 2026 WL 2666861, at *6 ("As with similar cases in this Circuit, the Court finds that the appropriate remedy in this case is to order Petitioner placed in the position she would have enjoyed absent the due process violation—that is, she should be released from detention.").

## CUSTODY

8. Petitioner is detained by ICE at the Adelanto ICE Processing Center in Adelanto, San Bernardino County, California, within the Central District of

California. She has been in ICE custody since October 12, 2026.

## JURISDICTION

9. The Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus) and 28 U.S.C. § 1331 (federal question). The Court may grant declaratory and further necessary relief under 28 U.S.C. §§ 2201-02 (Declaratory Judgment Act) and 28 U.S.C. § 1651 (All Writs Act), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause) guarantees the availability of the writ. Petitioner is in custody under the authority of the United States and challenges her detention as a violation of the Constitution and laws of the United States.

10. No jurisdiction-stripping provision bars review. Section 1252(g) is limited to the three discrete actions it lists: commencing proceedings, adjudicating cases, and executing removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Section 1252(b)(9) does not reach challenges to detention. *Jennings v. Rodriguez*, 583 U.S. 281, 292-95 (2018) (plurality opinion). Section 1226(e) bars review of discretionary custody judgments, not constitutional or statutory challenges to the authority to detain. *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *see also Nielsen v. Preap*, 586 U.S. 392, 401–02 (2019) (plurality opinion); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011).

## VENUE

11. Venue is proper under 28 U.S.C. §§ 2241(a) and 1391(e). Petitioner is confined in this District and her immediate custodian is located here. Respondents are officers or employees of the United States sued in their official capacities, and a substantial part of the events giving rise to the claims, including Petitioner's arrest at LAX, occurred in this District. The Warden of the Adelanto ICE Processing Center is Petitioner's immediate custodian and the proper respondent to this Petition. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); *Doe v.*

*Garland*, 109 F.4th 1188 (9th Cir. 2024).

**REQUIREMENTS OF 28 U.S.C. § 2243**

12. "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *INS v. St. Cyr*, 533 U.S. 289, 301 (2001).

13. The Court must grant the petition or issue an order to show cause "forthwith," unless Petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause issues, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

**EXHAUSTION**

14. Exhaustion in habeas is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court may waive it if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

15. An immigration judge's authority under § 1226(a) is limited to assessing flight risk and danger for purposes of setting or denying bond. It does not extend to reviewing whether Respondents could lawfully arrest Petitioner without a warrant or without a prior hearing. Petitioner's claim is that due process required a hearing before she was deprived of liberty. A post-deprivation bond hearing cannot remedy a deprivation that has already occurred, and the Board of Immigration Appeals lacks authority to rule on the constitutionality of the statutes it administers. *See Matter of C-*, 20 I&N Dec. 529, 532 (BIA 1992); *Yao*, 2026 WL 2666861, at *6.

16. Waiver of exhaustion is warranted where the petitioner "raises legal and constitutional challenges to [her] arrest and detention that would not be before

the BIA and, in any event, the BIA could not consider because it 'does not have jurisdiction to determine the constitutionality of the statutes it administers.'" *Moscui v. Semaia*, No. 5:26-CV-05748-MBK, 2026 WL 3027140, at *4 (C.D. Cal. Oct. 8, 2026). *See also Gagik T. v. Chesnut*, No. 1:26-CV-04337-MWJS, 2026 WL 1837413, at *2 (E.D. Cal. June 25, 2026) ("When, as here, the remaining claim is a constitutional one beyond the agency's competence to resolve, the prudential exhaustion requirement does not bar review.").

17. The same is true of Petitioner's statutory claims. An immigration judge cannot review whether the arrest complied with 8 U.S.C. § 1357(a)(2) and 8 C.F.R. §§ 236.1(b) and 287.8(c)(2)(ii), and a discretionary bond determination cannot provide the release Petitioner seeks. Respondents have also taken the position that persons like Petitioner are applicants for admission ineligible for bond. See *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025); *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025).

18. Because no immigration judge or the Board of Immigration Appeals has authority to grant the relief Petitioner seeks (a determination that her detention is unlawful under the Constitution and the Immigration and Nationality Act, and her immediate release), a bond request could not exhaust these claims.

19. Requiring one would also prolong the detention of a person who is epileptic, depends on medication and a special diet to maintain her health, and is held 405 miles from her home and family, causing irreparable injury.

## PARTIES

20. Petitioner Michelly De Jesus Sandigo Ortega is a 26-year-old citizen of Nicaragua with a pending asylum application and a valid EAD. She lived in South San Francisco, California, until ICE seized her on October 12, 2026. She is detained at the Adelanto ICE Processing Center. Her cousin, E.S.O., and E.S.O.'s partner, M.E.R.M., are also filing petitions for a writ of habeas corpus in this Court

(case numbers forthcoming).

21. Respondent James Janecka is the Warden of the Adelanto ICE Processing Center, where Petitioner is detained. He is Petitioner's immediate custodian and is sued in his official capacity.

22. Respondent Ernesto Santacruz Jr. is the Director of ICE's Los Angeles Field Office, Enforcement and Removal Operations, the field office with jurisdiction over the Adelanto ICE Processing Center. He is responsible for ICE's policies, practices, and procedures in that area, including those relating to detention. He is a legal custodian of Petitioner and is sued in his official capacity.

23. Respondent David J. Venturella is the Acting Director of ICE. He is responsible for administering and enforcing the immigration laws, including the detention and removal of noncitizens. He is a legal custodian of Petitioner and is sued in his official capacity.

24. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security ("DHS"), the agency that encompasses ICE. He is responsible for administering and enforcing the immigration laws under section 402 of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002), and 8 U.S.C. § 1103(a). He is legally responsible for any effort to detain and remove Petitioner and is sued in his official capacity.

25. Respondent Todd Blanche is the Attorney General of the United States and is sued in his official capacity. He oversees the implementation and enforcement of the immigration laws and delegates responsibility to the Executive Office for Immigration Review, which administers the immigration courts and the Board of Immigration Appeals.

## STATEMENT OF FACTS

26. Petitioner was paroled into the United States on March 16, 2023, under the CHNV parole program for nationals of Cuba, Haiti, Nicaragua, and Venezuela,

for two years. To obtain parole under that program, Petitioner was vetted by DHS in advance, and a U.S.-based supporter filed a Form I-134A on her behalf. She arrived by air and was paroled at the port of entry; she was not detained.

27. On March 11, 2024, before her authorized stay expired and within one year of her arrival, Petitioner filed an affirmative asylum application with USCIS. *See* 8 U.S.C. § 1158(a)(2)(B). The application disclosed her name, date of birth, home address, photograph, and the date her authorized stay would expire. It remains pending. Her parole period ended by its terms in approximately March 2025. She has remained a pending asylum applicant throughout.

28. USCIS later collected Petitioner's fingerprints and photograph at its Application Support Center in San Francisco.

29. On January 24, 2025, USCIS granted Petitioner an EAD under category (c)(8), valid through January 23, 2030. That grant authorized her to work in the United States while her asylum application is pending.

30. Petitioner has never been arrested or convicted of any crime anywhere. She has complied with every requirement USCIS imposed and has never missed an appointment.

31. On October 12, 2026, Petitioner traveled from Palm Springs, California, to LAX to take a domestic flight to San Francisco International Airport. She traveled with her cousin, E.S.O.; E.S.O.'s partner, M.E.R.M.; and a friend, E.C.L. The group arrived at LAX at about 5:40 p.m. E.S.O., M.E.R.M., and E.C.L. each have asylum applications pending with USCIS.

32. After the Transportation Security Administration checkpoint, as the group went up the stairs toward their gate, several federal immigration officers approached and asked to see identification. Petitioner and the others complied.

33. Because Petitioner and E.S.O. share a surname, the officers appeared confused and asked Petitioner whether she was E.S.O. Petitioner explained that

E.S.O. is her cousin.

34. The officers took E.S.O., M.E.R.M., and E.C.L. to another location, leaving Petitioner alone with the officers.

35. The officers checked Petitioner's information in their system, returned her identification, and told her she was free to leave. When Petitioner asked about her cousin and the others, the officers said they would contact her later.

36. Petitioner did not flee, hide, or resist. She stopped when officers asked for identification and gave them her name and documents.

37. Before Petitioner could leave the airport, a second officer stopped her near another exit, displayed ICE identification, directed her to turn off her electronic devices and place her belongings in her backpack, and told her she was under arrest.

38. The officer took Petitioner to a room inside the airport. After some time, she was handcuffed and placed in the same vehicle as E.S.O.

39. Throughout the encounter, the officers repeatedly referred to Petitioner and E.S.O. as "collaterals" and indicated that they were looking for M.E.R.M. and E.C.L. (the two men in the group), who were also arrested.

40. At no point did any officer present Petitioner with a warrant. She was not served with a Form I-200, Warrant for Arrest of Alien, at the time of her arrest. Petitioner is uncertain whether she was served a Form I-200 after her arrest, as she does not have a copy of her immigration paperwork.

41. ICE took Petitioner to the Federal Building at 300 N. Los Angeles Street, Los Angeles, where she was held overnight. Officers asked her questions about her employment and whether she files taxes.

42. At the Federal Building, Petitioner was given a form requiring her to choose between requesting a hearing before an immigration judge and accepting voluntary departure. She requested a hearing before an immigration judge.

43. On October 13, 2026, ICE transferred Petitioner to the Adelanto ICE Processing Center, where she remains. Her first hearing before the Adelanto Immigration Court is a master calendar hearing set for October 27, 2026. No bond hearing has been scheduled.

44. On information and belief, DHS issued a Notice to Appear to Petitioner after her arrest. No Notice to Appear had issued when she was arrested. Neither Petitioner nor counsel has yet obtained a copy.

45. Petitioner's parole period ended by its terms in approximately March 2025. For more than nineteen months after that, Respondents knew where she lived, left her at liberty, and took no action against her, and USCIS left her employment authorization in place. Nothing about Petitioner's circumstances changed during that period. Respondents gave her no notice and no opportunity to be heard before taking her into custody.

46. Petitioner is held far from her family, her home, her employers, her immigration attorney, and the evidence she would need to show that she is neither a flight risk nor a danger.

## LEGAL FRAMEWORK

47. The detention scheme distinguishes those arriving and seeking admission, governed by 8 U.S.C. § 1225, from those already in the country pending removal, governed by § 1226. *Jennings*, 583 U.S. at 287–89. A noncitizen may be an "applicant for admission" and still not be "arriving" or "seeking admission." Section 1225(b) "does not define the term 'seeking admission,'" and courts have interpreted the phrase to mean "'arriving alien[s]' and not … those 'who have been in the country for years.'" *Daza v. Albarran*, No. 25-cv-10214-RFL, 2026 WL 81518, at *4 (N.D. Cal. Jan. 12, 2026). A parolee who has entered and "has been continuously residing in the United States" is not "in the process of 'arriving,'" and "[n]one of that is changed by the fact that he has not been formally admitted."

*Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 307 (E.D.N.Y. 2025); *see also Qasemi v. Francis*, No. 25-cv-10029-LJL, 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025).

48. In this Circuit, the Court of Appeals has held that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164–65 (9th Cir. 2026). *Rodriguez Vazquez* concerned noncitizens present without admission and did not address parolees. Its reasoning applies here. A noncitizen who has not been admitted is treated as an applicant for admission, 8 U.S.C. § 1225(a)(1), and a parolee whose parole has ended is treated the same way, 8 U.S.C. § 1182(d)(5)(A). If an applicant for admission arrested in the interior is detained under § 1226, so is Petitioner.

49. District courts have so held as to parolees specifically. "Section 1225(b)(2)(A)'s mandatory-detention regime targets noncitizens seeking admission at the border; it does not extend to an individual that was lawfully paroled years earlier and apprehended in the interior after that status lapses." *Augustin v. Otay Mesa Det. Ctr.*, No. 3:26-CV-04398-JES-BLM, 2026 WL 2826653, at *2 (S.D. Cal. Sept. 21, 2026) (citing *Jennings*, 583 U.S. at 297–98, 303); *see also Baptiste v. Bondi*, No. CV-26-02586-PHX-SPL (CDB), 2026 WL 1684433, at *4–5 (D. Ariz. May 21, 2026) (same, for a CHNV parolee), *report and recommendation adopted*, 2026 WL 1682149 (D. Ariz. June 10, 2026); *Rodriguez Mendoza v. Warden, California City Correctional Center*, No. 1:26-cv-03785-DAD-CSK, 2026 WL 1481759, at *2–4 (E.D. Cal. May 27, 2026) (re-detained parolee under a categorical parole program whose parole had expired was "not lawfully detained pursuant to 8 U.S.C. § 1225(b)(2)(A) because he is not 'seeking admission'"; ordering immediate release); *Ulloa v. LaRose*, No. 26-cv-4418-JES-BLM, 2026 WL 2446791 (S.D. Cal. Aug. 20, 2026); *Gergawi v. LaRose*, No. 3:25-cv-3352-JES-MMP, 2025 WL

3719321, at *1-4 (S.D. Cal. Dec. 23, 2025).

50. Nine courts of appeals have rejected the government's reading of § 1225(b)(2)(A). See *Guerrero Orellana v. Moniz*, No. 25-2152 (1st Cir. Aug. 13, 2026); *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), *cert. granted sub nom. Rhoney v. Barbosa da Cunha*, No. 26-104 (U.S. Oct. 1, 2026); *Buele Morocho v. Warden Phila. FDC*, No. 26-1150 (3d Cir. Aug. 28, 2026); *Lopez Garcia v. Guadian*, No. 25-7044 (4th Cir. Sept. 10, 2026); *Lopez Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Cirrus Rojas v. Olson*, No. 25-3127 (7th Cir. July 30, 2026); *Rodriguez Vazquez*, 183 F.4th at 1164–65; *Santillan Quiroz v. Mullin*, 2026 WL 1876709, at *5 (10th Cir. June 30, 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami,* 175 F.4th 1258, 1262 (11th Cir. 2026) ("We are unpersuaded by the Government's re-interpretation of § 1225(b)(2)(A)."). Two circuits, the Fifth and Eighth, have accepted it. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). The Board's contrary decision in *Yajure Hurtado*, 29 I&N Dec. 216, receives no deference. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024).

51. The Supreme Court has granted certiorari in *Barbosa da Cunha* to resolve the circuit split. That grant does not disturb the Ninth Circuit's decision in *Rodriguez Vazquez*, whose holding binds this Court unless and until it is reversed. Nor does the grant affect Count One. Petitioner's due process claim does not depend on whether § 1225(b)(2)(A) or § 1226(a) governs, because the Due Process Clause limits how the government may take a person into custody under either provision. Petitioner is detained now, and she respectfully asks the Court to act promptly and not to hold this Petition in abeyance.

52. Section 1226(a) authorizes, but does not require, detention of a noncitizen pending a decision on removal, and permits release on bond or conditional parole. 8 U.S.C. § 1226(a)(1)–(2). Arrest under that section is made

"[o]n a warrant issued by the Attorney General." *Id.* § 1226(a). A warrantless arrest is permitted only where the officer has reason to believe the person is in the United States in violation of law and is likely to escape before a warrant can be obtained. 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii).

53. Petitioner is not "seeking admission." She has lived openly in the interior for more than three years, has a pending asylum application and employment authorization valid through January 23, 2030, and was arrested in the interior while traveling on a domestic flight. Respondents have placed her in removal proceedings, the posture in which § 1226(a) governs detention. Whatever charge DHS has lodged does not change the statute that governs her detention. Her detention is therefore governed by § 1226(a), not § 1225(b)(2)(A), as Count Two explains.

54. Respondents may contend that Petitioner's CHNV parole has ended and that she is therefore an applicant for admission. Section 1182(d)(5)(A) treats a person whose parole has ended as an applicant for admission. But under *Rodriguez Vazquez*, applicants for admission who are apprehended in the interior are detained under § 1226, not § 1225(b)(2)(A). USCIS has never revoked or limited her employment authorization.

55. Respondents may also rely on the clause of § 1182(d)(5)(A) providing that, when the purposes of parole have been served, the noncitizen "shall forthwith return or be returned to the custody from which he was paroled." That clause does not place Petitioner in detention under § 1225(b)(2)(A). Petitioner was never in custody: she arrived by air under the CHNV program with advance travel authorization and was paroled at the port of entry without being detained. There is no § 1225(b) custody to which she could "return." The same sentence of the statute directs that her case thereafter "shall continue to be dealt with in the same manner as that of any other applicant for admission," 8 U.S.C. § 1182(d)(5)(A), and under

*Rodriguez Vazquez*, an applicant for admission apprehended in the interior is detained under § 1226(a). 183 F.4th at 1164-65.

56. Nor does the regulatory definition of "arriving alien" bring Petitioner within § 1225(b)(2)(A). The regulations provide that "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked." 8 C.F.R. §§ 1.2, 1001.1(q). That definition governs how a noncitizen may be classified and charged; it does not answer whether a person who has lived in the interior for years is presently "seeking admission" within the meaning of § 1225(b)(2)(A). A regulation cannot expand the reach of a statutory mandatory-detention provision, and the Court interprets the statute independently. *Loper Bright*, 603 U.S. at 412-13. *Rodriguez Vazquez* construed the statute itself, and its construction controls.

57. The Board's decision in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), does not alter this analysis. *Q. Li* involved a noncitizen who was apprehended after crossing the border, detained, and then paroled out of that custody; the Board reasoned that, when parole ended, she returned to the § 1225(b) custody from which she had been released. Petitioner was never apprehended or detained before she was paroled. In any event, *Q. Li* receives no deference, *Loper Bright*, 603 U.S. at 412-13, and cannot displace *Rodriguez Vazquez*.

58. Respondents may also contend that Petitioner is entitled only to the process Congress provides. See *DHS v. Thuraissigiam*, 591 U.S. 103, 138-40 (2020). *Thuraissigiam* concerned a person apprehended about 25 yards from the border, *id.* at 107, shortly after crossing it, who sought further review of a denied asylum claim. Petitioner has lived in the interior for more than three years, with the government's knowledge and under its affirmative authorizations. Her claim is that the government may not re-detain her after that period without a hearing, not that she is entitled to enter.

59. Whatever the statutory basis, the Due Process Clause independently governs how the government may take a person into custody. Petitioner's detention is unlawful under the Due Process Clause (Count One) and under the Immigration and Nationality Act and its implementing regulations (Count Two).

## CLAIMS FOR RELIEF

### COUNT ONE
**Violation of the Fifth Amendment Due Process Clause**
**(Procedural Due Process: Denial of a Pre-Deprivation Hearing)**

60. Petitioner incorporates the foregoing paragraphs.

61. *Protected liberty interest.* Freedom from imprisonment lies at the heart of the liberty the Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Under *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972), a person released into the community develops a protected interest in continued liberty that cannot be revoked without due process. "Judges throughout the Ninth Circuit have repeatedly held, on facts materially similar to these, 'that a noncitizen who has lived at liberty for an extended duration while his immigration case proceeds – pursuant to the Government's affirmative decision not to detain him – holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process.'" *Ruiz Tellez v. United States Gen. Att'y*, No. 1:26-cv-05004-EJD, 2026 WL 2654571, at *2 (E.D. Cal. Sept. 9, 2026) (quoting *Norberto C.M. v. Warden, Central Valley Annex*, No. 1:26-CV-04674-MWJS, 2026 WL 1992747, at *4 (E.D. Cal. July 9, 2026)); *Gansukh*, 2026 WL 2962655, at *3. *See also Balbabyan v. Blanche*, No. 5:26-cv-03879-SP, 2026 WL 2678267, at *2 (C.D. Cal. Sept. 11, 2026) ("ICE was aware of his presence given his application and his appearances at ICE appointments and interviews, but chose not to detain him. Petitioner established a life for himself in the United States and therefore has

acquired a protected liberty interest in his release from immigration custody."); *Khushvaktov v. Santacruz*, No. 5:26-cv-04539-AJR, 2026 WL 2491407, at *4 (C.D. Cal. Aug. 24, 2026) ("Petitioner's arrest on August 4, 2026, without prior notice or a pre-deprivation hearing violated Petitioner's procedural due process rights."); *Zhou v. Janec[k]a*, No. 5:26-CV-04167-DTB, 2026 WL 2365550, at *6 (C.D. Cal. Aug. 14, 2026) ("Because each of the *Mathews* factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention – which was accompanied by no process – violates the Due Process Clause."); *Mendez Tzoc v. LaRose*, No. 26-CV-3965-GPC-VET, 2026 WL 2227161, at *5 (S.D. Cal. Aug. 3, 2026) ("Petitioner had a substantial liberty interest in remaining free from physical detention after years of government-authorized liberty; the procedures employed created a significant risk of erroneous deprivation; and Respondents have identified no governmental interest sufficient to justify dispensing with pre-deprivation process.").

62. DHS itself decided to release Petitioner into the community when it paroled her under 8 U.S.C. § 1182(d)(5)(A) in March 2023 – the kind of discretionary release decision that, under *Morrissey*, gives rise to a protected interest in continued liberty. The government has known Petitioner's identity, address, and status since at least March 11, 2024, when she filed her asylum application. It knew from that application when her authorized stay would expire. Rather than detain her, it collected her biometrics and, on January 24, 2025, granted her work authorization through January 23, 2030, thereby "sanction[ing] [her] continued presence in the United States." *Gagik T.*, 2026 WL 1837413, at *3. Nothing changed in the more than nineteen months between the end of her parole period and her arrest. Officers at LAX told her she was free to leave before re-arresting her, and they described her as a "collateral" while searching for others. Petitioner therefore holds a protected liberty interest, and Respondents made no

individualized finding that she is a flight risk or danger.

63. *The process due.* Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the Court weighs (1) the private interest affected; (2) the risk of erroneous deprivation under current procedures and the probable value of additional safeguards; and (3) the government's interest, including the burdens of additional process. Each factor favors Petitioner.

64. *Private interest.* Petitioner's interest in freedom from detention is "substantial." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022). She is 26 years old. She was working lawfully as an assistant teacher supporting children with disabilities and part-time at a pizzeria, and lived with her family in South San Francisco, California. She has epilepsy requiring medication and a special diet. She has been detained seven days, 405 miles from her home and counsel.

65. *Risk of erroneous deprivation.* Although *Rodriguez Diaz* held that § 1226(a)'s post-deprivation procedures facially satisfy due process, it "did not consider whether the Government may seize a person after years of government-sanctioned liberty without affording any prior process." *Gagik T.*, 2026 WL 1837413, at *3 (citing *Rodriguez Diaz*, 53 F.4th at 1196-97). Respondents seized Petitioner with no prior hearing and have held her seven days without any hearing, 405 miles from her home, cutting her off from her family and the evidence she needs. "The risk of erroneous deprivation from seizing a long-present, work-authorized asylum applicant with no criminal history, without any prior opportunity to be heard, is substantial," and the value of a pre-deprivation hearing "is correspondingly high." *Id.*

66. *Government interest.* "Although the Government has legitimate interests in enforcing the immigration laws, protecting the public, and ensuring that noncitizens appear for immigration proceedings, those interests do not justify

detaining Petitioner without first providing notice and constitutionally adequate pre-deprivation process." *Mendez Tzoc*, 2026 WL 2227161, at *4. The government's interest in detaining Petitioner without a hearing is minimal. *See J.E.H.G. v. Chesnut*, No. 1:25-cv-01673-JLT-SKO, 2025 WL 3523108, at *12 (E.D. Cal. Dec. 9, 2025) ("the government's interest in detaining Petitioner without proper process is slight."); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1040 (N.D. Cal. 2025) ("there was 'no countervailing government interest' in providing a hearing only after detention rather than beforehand."); *Alvarenga Matute v. Wofford*, 807 F. Supp. 3d 1120, 1135 (E.D. Cal. 2025) (explaining that the government's interest in dispensing with a pre-deprivation hearing was low because the cost of a custody hearing is "minimal"); *Tinoco v. Noem*, 818 F. Supp. 3d 1141, 1152–53 (E.D. Cal. 2025) ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government.") (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Petitioner has no criminal history, has complied with every immigration requirement, and presents no flight risk or danger.

67. Due process required that, before re-detaining Petitioner, Respondents provide a hearing before a neutral decisionmaker at which the government bears the burden of proving by clear and convincing evidence that she is a flight risk or a danger. *Rodriguez Diaz* does not foreclose that allocation of the burden: it addressed the post-deprivation procedures available under § 1226(a), not the process due before the government revokes years of sanctioned liberty. *See Gagik T.*, 2026 WL 1837413, at *3. Respondents provided none. A post-detention bond hearing would not cure that violation, because Petitioner "will have already suffered the harm" of her potentially erroneous detention. *Yao*, 2026 WL 2666861, at *6. Petitioner's detention violates the Fifth Amendment.

68. Respondents have also identified no individualized reason to believe Petitioner will flee or poses a danger. Her continued detention therefore bears no

reasonable relation to the purposes of civil immigration detention, which are ensuring appearance and protecting the community, and is independently arbitrary in violation of the Fifth Amendment. *See Zadvydas*, 533 U.S. at 690.

**COUNT TWO**
**Unlawful Arrest and Detention Under the Immigration and Nationality Act and Implementing Regulations (8 U.S.C. §§ 1225(b)(2)(A), 1226(a), 1357(a)(2); 8 C.F.R. §§ 236.1(b), 287.8(c)(2)(ii))**

69. Petitioner incorporates the foregoing paragraphs.

**A. The Warrantless Arrest Was Unlawful**

70. Arrest under § 1226(a) is made "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). Under 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii), a warrantless immigration arrest is lawful only if the officer has reason to believe the person is in the United States in violation of law and is likely to escape before a warrant can be obtained.

71. Respondents arrested Petitioner without a warrant. At the time of her arrest, Petitioner was not shown a Form I-200 or any other administrative warrant of arrest. Respondents were required to obtain a warrant issued by the Attorney General before arresting and detaining her under § 1226(a). 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b).

72. The warrantless-arrest exception in § 1357(a)(2) does not apply. Petitioner was a pending asylum applicant with a valid EAD. She did not flee, hide, or resist. She stopped when officers asked for identification and gave them her name and documents. Officers then checked her information, returned her identification, and told her she was free to leave. They arrested her only moments later near an exit. Respondents had no reason to believe she was likely to escape before a warrant could be obtained, and they made no such finding.

73. Respondents cannot justify the warrantless arrest after the fact. Section

1357(a)(2) permits a warrantless arrest only if the officer has reason to believe both that the person is in the United States in violation of law and that she "is likely to escape before a warrant can be obtained for [her] arrest." 8 U.S.C. § 1357(a)(2); *see Arizona v. United States*, 567 U.S. 387, 408 (2012). Whether that condition was met depends on what the arresting officers knew when they acted. *See Vasquez Perdomo v. Mullin*, ___ F. Supp. 3d ___, No. 2:25-cv-05605-MEMF-SP, 2026 WL 2751388, at *31 (C.D. Cal. Sept. 2, 2026) (enjoining warrantless arrests made "without a prearrest individualized determination by the arresting agent or officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained," and requiring agents to consider the totality of the circumstances known to them before the arrest). Any Notice to Appear issued after the arrest, *see* ¶ 44, cannot supply a likelihood-of-escape finding that the officers did not make. Nothing before the officers suggested that Petitioner was likely to escape. She had a fixed address known to the government, a pending asylum application, and employment authorization valid through January 23, 2030. She was traveling on a domestic flight to her home region. After the arrest, Respondents held her in a room at the airport and then overnight at the Federal Building, giving them ample time to obtain an administrative warrant on Form I-200. Respondents did not do so, and they made no finding that she was likely to escape.

74. Unlawful presence alone does not satisfy the escape requirement. Section 1357(a)(2) and its implementing regulation "clearly require two determinations: (1) unlawful presence and (2) likelihood of escape," and permitting an officer to infer likelihood of escape from unlawful presence alone "would render the language regarding the likelihood of escape determination superfluous." *Vasquez Perdomo*, 2026 WL 2751388, at *20. The likelihood-of-escape determination requires probable cause, particularized to the person arrested and based on "the facts known to the arresting officer at the time of the arrest." *Id.* at

*18 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)); *see Ybarra v. Illinois*, 444 U.S. 85, 91 (1979); *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). The Ninth Circuit has held that a warrantless arrest under § 1357 is improper where immigration authorities do not show that the person was likely to escape. *See Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995); *Vasquez Perdomo*, 2026 WL 2751388, at *21. And "boilerplate" likelihood-of-escape language cannot substitute for an actual, individualized analysis. *Vasquez Perdomo*, 2026 WL 2751388, at *23.

75. The record here forecloses any such determination. Officers stopped Petitioner, checked her information in their system, returned her identification, and told her she was free to leave. *See* ¶ 35. Moments later, a different officer arrested her near an exit. *See* ¶ 37. Throughout the encounter, officers referred to her as a "collateral" while searching for the two men in the group. *See* ¶ 39. An arrest made after officers had reviewed Petitioner's information and released her, and that was incidental to a search for others, reflects no prearrest, individualized determination that she was likely to escape. *See Vasquez Perdomo*, 2026 WL 2751388, at *14, *17 (finding a policy and practice of warrantless arrests made with no escape-risk assessment or with an assessment based solely on unlawful status). If Respondents produce a Form I-200 bearing the date of the arrest but no time of issuance, a same-day date does not establish that the warrant preceded the arrest. The *Vasquez Perdomo* injunction also requires officers to document "[t]he specific, particularized facts" supporting any prearrest probable-cause determination, as well as the time of arrest, *id.* at *31, and Respondents should be required to produce any such documentation with their return.

76. The *Vasquez Perdomo* court found "ample evidence that Defendants have an ongoing policy and practice of conducting warrantless arrests in violation of the requirement to conduct a likelihood-of-escape analysis." *Vasquez Perdomo*,

2026 WL 2751388, at *14. Petitioner is also a member of the class certified in *Vasquez Perdomo*. *See Vasquez Perdomo*, No. 2:25-cv-05605-MEMF-SP (C.D. Cal. Sept. 16, 2026) (order granting class certification). She was arrested in this District after June 6, 2025, for an alleged immigration violation, without a warrant and, on information and belief, without a pre-arrest, individualized assessment of probable cause that she was likely to escape. Her arrest came after the court in that case enjoined such arrests and required agents to document the facts supporting any escape-risk determination. Any such documentation of Petitioner's arrest should therefore already exist.

77. Respondents may contend that 8 C.F.R. § 287.3(d) gave them 48 hours after the arrest to issue a warrant. It did not. Section 287.3 governs the processing of a person arrested "under the authority contained in" § 1357(a)(2), 8 C.F.R. § 287.3(a); *see id.* § 287.8(c)(2)(iv), and that authority exists only if the officer had probable cause, *before* the arrest, to believe the person was likely to escape before a warrant could be obtained. "[E]scape risk analyses are a prerequisite to warrantless arrest." *Vasquez Perdomo*, 2026 WL 2751388, at *22. The 48-hour period in § 287.3(d) governs custody processing after a lawful arrest; it cannot retroactively supply the "prearrest individualized determination" that § 1357(a)(2) requires. *Id.* at *31; *see id.* at *18.

78. Nor does Respondents' detention authority supply the missing arrest authority. The power to arrest under § 1357 is distinct from the government's detention and removal powers, *id.* at *29, and an agency must follow the regulations that govern the exercise of its arrest authority, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954). Respondents' failure to comply with 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii) renders Petitioner's arrest and resulting detention unlawful.

79. This claim does not seek to suppress evidence or to terminate removal

proceedings, so *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039-40 (1984), does not apply. Petitioner challenges the authority under which Respondents hold her in custody. The statute conditions detention under § 1226(a) on a warrant or, absent one, on the findings that § 1357(a)(2) requires. Respondents satisfied neither condition, and habeas is the remedy for custody that lacks a lawful basis. A bond hearing under § 1226(a) would not cure the violation: it asks whether continued custody is warranted, not whether Respondents had authority to make the arrest, and "the ensuing detention (that would stem from an unlawful arrest) naturally constitutes irreparable harm." *Vasquez Perdomo*, 2026 WL 2751388, at *24. The appropriate remedy is release.

***B. Petitioner Is Detained Under § 1226(a), Not § 1225(b)(2)(A)***

80. Section 1225(b)(2)(A) applies only to an applicant for admission who is "seeking admission." Petitioner is not, for the reasons in the Legal Framework, which she incorporates. She was arrested in the interior after more than three years of government-sanctioned residence, with a pending asylum application and employment authorization. *See Rodriguez Vazquez*, 183 F.4th at 1164-65; *Augustin*, 2026 WL 2826653, at *2; *Rodriguez Mendoza*, 2026 WL 1481759, at *3-4.

81. That conclusion does not change because Petitioner's CHNV parole has ended. *See* Legal Framework, *supra*. Petitioner's detention is governed by § 1226(a), which entitles her to an individualized custody determination and release on bond or conditional parole. 8 U.S.C. § 1226(a)(1)-(2). Respondents have identified no such determination and have provided no bond hearing. Her first immigration court hearing, set for October 27, 2026, is a master calendar hearing, not a custody hearing.

82. Petitioner's arrest and continued detention violate 8 U.S.C. §§ 1226(a) and 1357(a)(2) and 8 C.F.R. §§ 236.1(b) and 287.8(c)(2)(ii), and § 1225(b)(2)(A) supplies no authority for her detention. Petitioner is entitled to release or, in the

alternative, to a bond hearing under § 1226(a) at which the government bears the burden of proof by clear and convincing evidence.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

a. Assume jurisdiction over this matter;

b. Enjoin Respondents from transferring Petitioner outside the Central District of California while this Petition is pending, or in the alternative require at least 72 hours' written notice to counsel before any transfer;

c. Order Respondents to show cause within three days why the writ should not be granted, *see* 28 U.S.C. § 2243, and to produce with their return any Form I-200, Warrant for Arrest of Alien, and any Form I-213, Record of Deportable/Inadmissible Alien, concerning Petitioner, together with records showing the date and time each was issued or completed and the time of Petitioner's arrest, and any other record of a custody or escape-risk determination concerning Petitioner;

d. Declare that:

   i. Petitioner's detention without a pre-deprivation hearing violates the Due Process Clause of the Fifth Amendment (Count One);

   ii. Petitioner's warrantless arrest and resulting detention violate 8 U.S.C. §§ 1226(a) and 1357(a)(2) and 8 C.F.R. §§ 236.1(b) and 287.8(c)(2)(ii) (Count Two, Part A); and

   iii. Petitioner is not subject to detention under 8 U.S.C. § 1225(b)(2)(A), and her detention is governed by 8 U.S.C. § 1226(a) (Count Two, Part B);

e. Issue a writ of habeas corpus ordering Respondents to release Petitioner immediately without conditions and with all of her identity documents and paperwork, thereby returning her to the status quo ante;

f. Enjoin Respondents from re-detaining Petitioner unless and until they demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral decisionmaker, that Petitioner is a flight risk or a danger to the community such that her physical custody is legally justified, and then only on a warrant issued in compliance with 8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1(b), or in compliance with 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii);

g. In the alternative to (e) and (f), order a bond hearing under 8 U.S.C. § 1226(a) before a neutral decisionmaker within seven days, at which, as due process requires, the government bears the burden by clear and convincing evidence and at which the decisionmaker must consider Petitioner's ability to pay and alternatives to detention, *see Hernandez v. Sessions*, 872 F.3d 976, 990-91 (9th Cir. 2017);

h. Award reasonable costs and attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable law; and

i. Grant such other relief as the Court deems just and proper.

Dated: October 19, 2026

Respectfully submitted,

/s/ Lina Baroudi

Lina Baroudi
LAW OFFICE OF LINA BAROUDI
2680 S. White Rd., Ste. 151
San Jose, CA 95148-2079
T: (408) 300-2655
lina@linalaw.com

Attorney for Petitioner-Plaintiff,
Michelly De Jesus Sandigo Ortega

## VERIFICATION

I, Lina Baroudi, declare as follows:

I am an attorney licensed to practice in the State of California and habeas counsel for Petitioner Michelly De Jesus Sandigo Ortega. I submit this verification on her behalf under 28 U.S.C. § 2242 because Petitioner is detained at the Adelanto ICE Processing Center in Adelanto, California, nearly 400 miles from my office, and cannot review and sign the Petition in time for its prompt filing. I have discussed the events described in this Petition with Petitioner and others with personal knowledge, and I have reviewed the immigration documents available to me. On that basis, I verify that the factual statements in the foregoing Petition are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 19, 2026, at San Jose, California.

/s/ Lina Baroudi

Lina Baroudi
LAW OFFICE OF LINA BAROUDI
2680 S. White Rd., Ste. 151
San Jose, CA 95148-2079
T: (408) 300-2655
lina@linalaw.com

Attorney for Petitioner-Plaintiff,
Michelly De Jesus Sandigo Ortega